243 F.2d 914
 Joe H. SCHNEIDER, Trustee in Bankruptcy of the Estate of Morgan Insurance Agency, Inc., Bankrupt, Appellant,
v.
Dutch O'NEAL and George A. Toney, doing business as Eton Insurance Agency, Appellees.
 No. 15693.
 United States Court of Appeals Eighth Circuit.
 May 14, 1957.
 
 COPYRIGHT MATERIAL OMITTED D. D. Panich, Little Rock, Ark., for appellant.
 Barber, Henry & Thurman, Little Rock, Ark., for appellees.
 Before SANBORN, WOODROUGH and VOGEL, Circuit Judges.
 SANBORN, Circuit Judge.
 
 
 1
 The trustee in bankruptcy of the Morgan Insurance Agency, Inc., an Arkansas corporation, — which, for convenience, we shall refer to as "Morgan" — has appealed from an adverse judgment in an action brought by him to recover from Dutch O'Neal and George A. Toney, doing business as Eton Insurance Agency (appellees), moneys paid to them by Morgan, prior to bankruptcy, as commissions on automobile insurance written by Morgan, as agent, covering automobiles sold by Dutch O'Neal Motors, Inc., an automobile dealer of Little Rock, Arkansas.
 
 
 2
 In his complaint, filed November 2, 1953, the trustee alleged that the oral agreement under which the defendants received these commissions violated the insurance laws of Arkansas, that there was no consideration for the payments of the commissions to the defendants, and that such payments were made in furtherance of an illegal scheme to hinder, delay and defraud the bankrupt's creditors. The defendants in their answer denied these allegations of the complaint. At the opening of the trial, the defendants for the first time asserted that if the agreement under which the commissions in suit were paid to them by the bankrupt was illegal the parties were in pari delicto, that the right of the trustee to recover could not be greater than the right of Morgan itself, and that they were entitled to judgment, whether the agreement was legal or illegal.
 
 
 3
 There was virtually no dispute as to the evidentiary facts. From October 8, 1952, to January 16, 1953, Morgan, under an oral agreement, had paid to Eton Insurance Agency (which will be referred to as "Eton"), a partnership consisting of the defendants, $33,669.76 as commissions. These were the net commissions earned by Morgan on policies written by it covering automobiles sold by Dutch O'Neal Motors, Inc. Neither of the defendants was a licensed agent for the insurance company or companies in which the automobile insurance was placed by Morgan. Eton had no license from the State of Arkansas, no capital, no office apart from that of Dutch O'Neal Motors, Inc., no employees, and no business aside from the transactions had with Morgan. Eton was obviously a device for siphoning off, for the benefit of Dutch O'Neal and possibly Toney, the commissions in question earned by Morgan.
 
 
 4
 It was stipulated at the trial that claims filed against the bankrupt totalled $114,911.56, that Morgan was adjudicated a bankrupt on April 23, 1953, that the trustee had been appointed on May 13, 1953, had qualified on May 20, 1953, and that he had on hand the sum of $5,831.87.
 
 
 5
 After the trial, the District Court at first determined that the commissions paid by Morgan to Eton were recoverable by the trustee in bankruptcy because the defendants were prohibited by the insurance laws of Arkansas from receiving such commissions. After a discussion of the laws of Arkansas governing insurance agents, brokers and solicitors, the court in its memorandum opinion said:
 
 
 6
 "From the foregoing it will be seen that I am definitely of the opinion that the commissions paid or given by Morgan Insurance Agency to the Eton Insurance Agency were prohibited by the provisions of the laws of this state. It follows that the Trustee in Bankruptcy, who now stands in the shoes of the bankrupt, is entitled to recover the amount due, which it is agreed is not $43,397.31 as set forth in the complaint, but the sum of $33,669.76, unless the principle of law regarding the rights and liabilities of the parties in pari delicto prohibits the recovery."
 
 
 7
 The court also ruled that the defendants had waived the defense of pari delicto by their failure to assert it in their answer. The court expressed the opinion that, in any event, there was a disparity of dereliction between the parties to the illegal agreement, Morgan being the lessser offender of the two.
 
 
 8
 Judgment was entered on July 16, 1956, in favor of the trustee for $33,669.76, with interest at 6% from November 2, 1953. On July 23, 1956, the defendants filed a motion to set aside the judgment in favor of the trustee, and for judgment in their favor, or, in the alternative, for a new trial.
 
 
 9
 On September 28, 1956, the court ruled upon the defendants' motion. See 145 F. Supp. 120. While the court determined that the defendants were entitled to judgment, it adhered to its conclusion that the arrangement whereby the earned commissions of the bankrupt on policies covering automobiles sold by Dutch O'Neal Motors, Inc., were diverted to Eton, was illegal. The court said, on page 123 of 145 F.Supp., that, at the beginning of the trial, counsel for the trustee announced in open court that the trustee did not rely for a recovery upon any provision of the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., but "solely upon the illegality of the transactions under the insurance statutes of the State of Arkansas, * * *."
 
 
 10
 The last three paragraphs of the court's opinion read as follows (page 134 of 145 F.Supp.):
 
 
 11
 "At one time it was suggested in a brief by counsel for plaintiff that payment of these monies was fraudulent under the provisions of § 68-1302 and § 68-1304, Ark.Stat.1947. This position has been properly abandoned. Therefore, I am unable to find that said § 110(e) (1) [of Title 11, U.S.C.A., § 70, sub. e(1) of the Bankruptcy Act] serves to take the Trustee out of the shoes of the bankrupt, but he is incumbered with the same impediments the bankrupt would have if it were now before the court seeking to recover the illegal payments to Toney and O'Neal.
 
 
 12
 "Briefly summarizing, I find that I must hold that while the transactions involved were in violation of the Statutes of Arkansas, both § 66-321 and § 66-326 of Ark.Stat. 1947, and penalized by the provisions of the latter section, I cannot possibly find that Morgan's participation in these illegal acts was accompanied by any extenuating circumstances or conditions. It unquestionably was `in pari delicto' and this serves to defeat the claim of the Trustee for the recovery of the monies paid by Morgan to Eton.
 
 
 13
 "I am, therefore, entering a judgment dismissing the plaintiff's complaint at his costs."
 
 
 14
 If counsel for the trustee at the trial abandoned all reliance upon any provision of the Bankruptcy Act, he apparently was not and is not aware of it. The printed record fails to show any such abandonment. It does show that in his opening statement counsel for the trustee said:
 
 
 15
 "* * * This case was brought under the provisions of Sections 60, 67 and Section 70 of the Bankruptcy Act. I say to the Court now, in all candor, that we will make no attempt to introduce any proof under the provisions of Section 60 or 67 of the Bankruptcy Act and they may be disregarded. The case was also brought under certain sections of the Statutes of the State of Arkansas, particularly Sections 66-301, 321, 326, 68-1302 and 68-1304. There are other pertinent statutes regulating insurance companies which are applicable. * * *"
 
 The record shows that he also said:
 
 16
 "* * * Based upon a contract which they [Morgan and Eton] had prior to bankruptcy, it is a simple case of the trustee in bankruptcy, who, we admit under the provisions of the bankruptcy act, stands in the shoes of the bankrupt, attempting to collect back from Dutch O'Neal or Eton Insurance Agency that which they unlawfully exacted from the bankrupt. * * *"
 
 
 17
 However, he then went on to point out to the court that the trustee represented the unsecured creditors of the bankrupt's estate and was attempting to recover what belonged to them.
 
 
 18
 While it is unquestionably true that the trustee stood in the shoes of the bankrupt, it is equally true that he stood in the overshoes of the creditors, of whom — it may fairly be inferred from the evidence — there were many at the time the bankrupt was improvidently, and for little or no consideration, transferring its commissions to Eton.
 
 
 19
 It has long been the law that under § 70, sub. e[1] of the Bankruptcy Act (11 U.S.C.A. § 110 sub. e, "the trustee [in bankruptcy] may avoid any transfer by the bankrupt of his property which any creditor of the bankrupt might have avoided, and he is given authority to recover the property in the hands of anyone not a bona fide holder for value." Globe Bank and Trust Company of Paducah, Kentucky v. Martin, 236 U.S. 288, 297, 35 S.Ct. 377, 380, 59 L.Ed. 583. The trustee in bankruptcy gets title to all property which has been transferred by the bankrupt in fraud of creditors. Moore v. Bay, 284 U.S. 4, 5, 52 S.Ct. 3, 76 L.Ed. 133. The trustee in bankruptcy may take advantage of any law, state or federal, which will enable creditors of a bankrupt to avoid transfers made or suffered by the bankrupt. MacLachlan on Bankruptcy, Hornbook Series, page 327. The trustee in bankruptcy may assert the right given the creditors by state law to set aside a fraudulent transfer. Connell v. Walker, 291 U.S. 1, 5, 54 S.Ct. 257, 78 L.Ed. 613. The fraudulent or voidable character of the transfer with respect to the creditor or creditors in whose right the trustee sues, and the amount of recovery if any, must be determined by the court in which recovery is sought, in accordance with applicable state law. Remington on Bankruptcy, Vol. 4, § 1595, pages 320-321.
 
 
 20
 It is not conceivable to us that where a trustee in bankruptcy is attempting under § 70, sub. e to recover for the benefit of the bankrupt's estate money or property alleged to have been illegally and fraudulently transferred prior to bankruptcy, the transferee can successfully invoke the doctrine of pari delicto.
 
 
 21
 The District Court, we think, overlooked the fact that the trustee's claim was based not only upon the alleged right of Morgan to recover the commissions in suit, but also upon the asserted right of Morgan's creditors — who could not be charged with complicity in any violation of the laws or public policy of Arkansas — to avoid the transfers of these commissions, stated to have been in fraud of creditors.
 
 
 22
 What the District Court has determined is that Morgan, at the time the involuntary petition in bankruptcy was filed, was not, under Arkansas law, entitled to recover the commissions which it had illegally and improvidently, but voluntarily, paid to Eton, and that therefore the trustee in bankruptcy, to the extent his rights were derived from Morgan alone, could not have judgment. That conclusion, we think, is not demonstrably wrong and may be said to represent the considered views of the trial court upon a doubtful question of local law. See Buder v. Becker, 8 Cir., 185 F.2d 311, 315.
 
 
 23
 The issue whether the trustee may, on behalf of any of the creditors of Morgan, recover the commissions in suit, under § 70, sub. e of the Bankruptcy Act, has not, we think, been tried and determined. Surely, if under applicable Arkansas law the transfers of the commissions in suit by Morgan to Eton were in fraud of any of Morgan's creditors and voidable as to them, the trustee is entitled to judgment against the defendants for the amount of the commissions wrongfully transferred.
 
 
 24
 The judgment appealed from, in so far as it determines that the trustee in bankruptcy, standing in the shoes of Morgan, cannot recover, is affirmed. So much of the judgment as constitutes a determination that the trustee was not entitled to recover under § 70, sub. e of the Bankruptcy Act is reversed, and the case is remanded with directions to try that issue and to determine, from the evidence already of record and such additional pertinent evidence, if any, as the parties may wish to adduce, whether, under the applicable Arkansas law, the transfers in suit could have been avoided by any of the creditors of Morgan, and whether the amount of the commissions is therefore recoverable by the trustee under § 70, sub. e.
 
 
 
 Notes:
 
 
 [1]
 "e (1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this Act which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act, shall be null and void as against the trustee of such debtor
 "(2) All property of the debtor affected by any such transfer shall be and remain a part of his assets and estate, discharged and released from such transfer and shall pass to, and every such transfer or obligation shall be avoided by, the trustee for the benefit of the estate: * * * The trustee shall reclaim and recover such property or collect its value from and avoid such transfer or obligation against whoever may hold or have received it, except a person as to whom the transfer or obligation specified in paragraph (1) of this subdivision [e] is valid under applicable Federal or State laws.
 "(3) For the purpose of such recovery or of the avoidance of such transfer or obligation, where plenary proceedings are necessary, any State court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction."